**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**
Dec 17 2014, 10:27 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**ANDREW S. WILLIAMS**
**BRIAN L. ENGLAND**
**RYAN J. GUILLORY**
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE:

**BRYAN H. BABB**
Bose McKinney & Evans LLP
Indianapolis, Indiana

**JEFF SHAW**
Bloomington, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JAMES ROOF, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1402-CT-106 |
| | ) | |
| DAVID ASHER, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable David J. Dreyer, Judge
Cause No. 49D10-1008-CT-33914

**December 17, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

STATEMENT OF THE CASE

Appellant-Defendant, James Roof (Roof), appeals the jury's verdict, awarding $240,000.00 to Appellee-Plaintiff, David Asher (Asher).

We affirm.

ISSUES

Roof raises one issue on appeal, which we restate as follows: Whether the trial court abused its discretion by tendering an additional instruction following a question from the deliberating jurors regarding a perceived conflict between a state statute and a local ordinance.

In his Appellee's brief, Asher raises one issue, which we restate as: Whether he is entitled to reimbursement of his appellate attorney's fees pursuant to Ind. Appellate Rule 66(E).

FACTS AND PROCEDURAL HISTORY

On May 5, 2010, Roof was traveling southbound on Meridian Street in Indianapolis, Indiana, when he made a right-hand turn onto Michigan Street. Roof turned into the right lane on Michigan Street, traveling at approximately 25mph, when he passed Asher, who was riding a motorized scooter in the far right bicycle lane. Approaching the intersection with Illinois Street, Roof veered left to turn onto Illinois Street but then realized that Illinois is a one-way northbound. At that point, Roof attempted to turn right to head north onto Illinois Street and collided with Asher.

On August 2, 2010, Asher filed his Complaint, alleging that Roof negligently drove his vehicle into his scooter, and requesting damages. On November 5 through

2

November 7, 2013, the trial court conducted a jury trial. At the close of the evidence, the trial court tendered twenty-six instructions to the jury. After deliberations had commenced and before the verdict was returned, the jurors submitted three questions to the trial court. The question relevant for purposes of this appeal read: "There are two contradictory laws. The State law Instruction #14 and City ordinance Instruction #17. Which is in effect or takes priority?" (Appellant's App. p. 70).

Jury Instruction # 14 referred to Indiana Code section 9-21-8-2(b)(2) which provided, "in part, as follows: upon all roadways, a vehicle proceeding at less than the normal speed of traffic at the time and place under the conditions then existing shall be driven as close as practicable to the right-hand curb or edge of the roadway." (Appellant's App. p. 37). Instruction #17 incorporated Marion County Municipal Code Section 441-371, and stated:

> When the events in this case happened, Section 441-371 of the Marion County Municipal Code provided as follows:
>
> (a) Bicycle paths and lanes shall be used exclusively for the operation of bicycles unless signage specifies joint use with pedestrians.
> (b) With the exception of a moped being operated exclusively with human muscular power, no person shall operate any other conveyance in a designated bicycle path or lane.
> (c) A person may operate a motor vehicle upon a bicycle lane for the limited purpose of making a turn, entering or leaving an alley, private road, or driveway.
>
> If you decide from the greater weight of the evidence that a person violated Section 441-371 of the Marion County Municipal Code, and that the violation was not excused, then you may decide that person was at fault.

(Appellant's App. p. 40).

The trial court consulted with counsel of both parties as to its response to the jurors' question. During these discussions, Asher requested that an additional instruction be proffered, instructing the jury to "try to resolve it without a conflict" but if the jury found a conflict with the state statute expressly permitting the activity and a city ordinance forbidding it, then "that's an impermissible conflict and the state statute [] expressly permits that activity." (Transcript p. 408). On the other hand, Roof objected to the proposed instruction because it would imply "that the ordinance would be found unconstitutional." (Tr. p. 409). Concluding that it failed to see the conflict, the trial court decided to "err on the side" of giving an additional jury instruction. (Tr. p. 410). After bringing the jury back into the courtroom and without re-reading the other jury instructions, the trial court tendered the twenty-seventh jury instruction, which provided:

> Governmental actions, including ordinances, taken under the grant of police power, must be in reasonable furtherance of the goals of the health, order, morals, or safety of society at large. Like statutes, ordinances are presumed to be valid. However, an impermissible conflict with state law will be found if an ordinance seeks to prohibit that which a statute expressly permits. If the state has not chosen to occupy an area to the exclusion of municipal regulation, a city may impose additional, reasonable regulations, and may supplement burdens imposed by non-penal state law, provided the additional burdens are logically consistent with the statutory purpose.

(Appellant's App. p. 51). Upon its reading, the trial court sent the jury back to the jury room to resume deliberations. Later that day, the jury returned a verdict, assigning Roof sixty percent of the fault and awarding Asher $240,000.00 in damages. On December 6, 2013, Roof filed a motion to correct error which was deemed denied forty-five days later on January 20, 2014.

Roof now appeals. Additional facts will be provided as necessary.

4

DISCUSSION AND DECISION

Roof contends that the trial court abused its discretion by proffering an additional instruction when, during deliberations, the jury perceived a conflict between two previously given instructions. However, prior to turning to the merits of Roof's argument, we must address Asher's contention that Roof waived his claim.

I. *Waiver*

Asher's claim of waiver is centered on two grounds: (1) Roof failed to include *verbatim* the objection to the jury instruction in the argument section of his appellate brief and (2) Roof's objection at trial is distinct from his argument on appeal.

A. *Verbatim Inclusion*

Pursuant to Indiana Appellate Rule 46(A)(8)(e) "[w]hen error is predicated on the giving or refusing of any instruction, the instruction shall be set out verbatim in the argument section of the brief with the verbatim objections, if any, made thereto." The failure to comply with this mandate "results in waiver of the issue." *Taylor v. State*, 587 N.E.2d 1293, 1303 (Ind. 1992), *reh'g denied.* Asher asserts that because Roof omitted to comply with the Appellate Rule by failing to include his verbatim objection to the additional jury instruction, he waived the argument for our review.

The requirement instituted by our Appellate Rule is "more than a mere formality." *Reed v. State*, 702 N.E.2d 685, 690 (Ind. 1998). It plays an important role in assuring that this court has a complete and accurate record of what transpired before the trial court. *Id.* In the context of jury instructions, the requirement ensures that the court has a record of

5

what the jury was actually instructed so that it may make informed decisions as to the propriety and the consequences of the giving or the refusing of any instructions. *Id*.

Here, Roof, as appellant, presented this court with a record that is complete with respect to the issues raised on appeal and provided us with the transcript of the proceedings before the trial court. *See* App. R. 9(F)(5); 50. In the fact section of his appellate brief, Roof included the additional jury instruction verbatim*,* accompanied by citations to the record. While it is true that the verbatim objections are not set out, Roof's objection is included as a paraphrase with appropriate references to the transcript pages. Even though Roof did not explicitly follow the mandate of App. R. 46(A)(8)(E), his "brief substantially complies with the rules and is of sufficient cogency that it can be responded to by appellees with undue hardship or extraordinary expense." *Dahlberg v. Ogle*, 364 N.E.2d 1174, 1175 (Ind. 1977). Concluding that the purpose of App. R. 46(A)(8)(e) is satisfied as we are able to make an informed decision based on the documents before us, we will not waive Roof's argument on this ground.

## B. *Objection*

Next, Asher contends that Roof's objection to the additional jury instruction before the trial court is different from the one he asserts on appeal. To preserve erroneous instructions on appeal, Roof was required to make a timely, specific objection to the instruction at trial. *See* Ind. Trial Rule 51(C). An objection which is not specific preserves no error on appeal. *Southport Little League v. Vaughan*, 734 N.E.2d 261, 273 (Ind. Ct. App. 2000), *trans. denied*. In addition, a party claiming error in the giving of an instruction is limited to his stated objection at trial. *Id*.

6

In the present case, Roof objected at trial to the giving of an additional instruction as follows:

> I would object to the proposed instruction because to me it implies that the ordinance would be found unconstitutional. Essentially that would be the ultimate result if they find a conflict we're saying that this Marion County City Ordinance --- City Council ordinance is unconstitutional. Like you, Judge, I don't see the conflict here. I read the statute it says to the right hand curb or edge of the roadway. You know, as [Asher] acknowledge[s], we haven't really argued that there's a conflict of the laws and the time for that would have been passed for us but as I read it talks about the roadway and I think we probably argued to a different interpretation of roadway versus --- as travel lanes and whether that extend[s] into the bike lane as well.

(Tr. pp. 409-10). After objecting, the trial retired to

> [] go look real quick and I'll type something out. You guys can sit here and I'll bring it back --- I'll bring it to you and I know that [Roof] objects regardless of what I put together[.]

(Tr. p. 411). Prior to actually proffering the additional instruction to the jury, the trial court confirmed with Roof that he "continued to object," which Roof affirmed. (Tr. p. 411).

On appeal, Roof asserts that the trial court abused its discretion by giving an additional instruction because it "improperly invited the jury to determine whether the Marion County Ordinance conflicted with state law, and thus, whether it was constitutional." (Appellant's Br. p. 6) As secondary arguments, Roof claims that the jury instruction was unnecessary because it was misleading and confusing and, even if the instruction was properly tendered, the trial court abused its discretion by reading it in isolation. Because Roof's secondary arguments were not developed before the trial court, he has waived those issues for our review. *See Southport Little League,* 734 N.E.2d at

273. Therefore, we will only address Roof's contention based on his constitutionality argument.

## II. *Jury Instruction*

Turning to the merit of Roof's contention, we note that instruction of the jury is left to the sound judgment of the trial court, and our review of a trial court's decision in this regard is highly deferential: we will not disturb the court's judgment absent an abuse of discretion. *City of Terre Haute v. Simpson*, 746 N.E.2d 359, 367 (Ind. Ct. App. 2001), *trans. denied*. The purpose of an instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict. *Southport Little League*, 734 N.E.2d at 273.

After deliberations had commenced and before the verdict was returned, the jurors submitted three questions to the trial court, one of which is relevant for purposes of this appeal. This question read: "There are two contradictory laws. The State law Instruction #14 and City ordinance Instruction #17. Which is in effect or takes priority?" (Appellant's App. p. 70). Upon notifying counsel for both sides, the trial court studied the question with the parties' attorneys and stated:

> As I told you this doesn't matter I --- it's apparent to me why they think it's contradictory but that doesn't make any difference to the case. My first inclination, as I told you, was to tell them just to continue to deliberate and not provide an answer but there are other possibilities and our law and I think our jury rules provide for other things to assist the jury if possible and so I want to give each side an opportunity to think about it and give any ideas.

(Tr. p. 405). While Asher requested an additional jury instruction to guide the jury in construing a statute and an ordinance, Roof objected to the proffer of any instruction

because it would imply "that the ordinance would be found unconstitutional." (Tr. p. 409).

When confronted with a question from a jury which has commenced deliberation, the challenge to the trial court is to respond in a manner which accords with the legal requirements for final instructions and which is fair. *Jenkins v. State*, 424 N.E.2d 1002, 1003 (Ind. 1981). Indiana Code section 34-36-1-6 governs the procedure a trial court must follow when answering a jury question submitted during deliberations. That statute provides:

> If, after the jury retires for deliberation:
> (1) there is a disagreement among the jurors as to any part of the testimony; or
> (2) the jury desires to be informed as to any point of law arising in the case;
> The jury may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or the attorneys representing the parties.

The statutory phrase "any point of law arising in the case" is construed narrowly and mandates that the trial court inform counsel and provide a discrete answer only when the jury question "points to 'an error or legal lacuna in the final instructions.'" *Henri v. Curto*, 908 N.E.2d 196, 205 (Ind. 2009). Once the trial court, in the exercise of its discretion, has determined that a question posed by the jury relates to the jury's desire to be informed as to any point of law arising in the case, the court then must supply the requested information, to the extent that it consists of an answer to the legal questions. *Foster v. State*, 698 N.E.2d 1166, 1170 (Ind. 1998). This statutorily prescribed procedure for dealing with jury questions applies in criminal as well as civil cases. *Wray v. State*, 720 N.E.2d 1185, 1189 (Ind. Ct. App. 1999).

Here, the jury requested guidance as to the precedence between a statute and a city ordinance. Unlike Roof, we find that the jury was not intending to declare the ordinance unconstitutional; rather, the jury sought clarification on the interrelationship between a statute and an ordinance. Therefore, properly characterizing this question as a legal lacuna in the final instructions, the trial court was mandated to answer the jury's question. In providing a response, the trial court relied on *Hobble v. Basham*, 575 N.E.2d 693 (Ind. Ct. App. 1991), where this court analyzed whether a city ordinance conflicted with a statute:

> Governmental actions, including ordinances, taken under the grant of police power, must be in reasonable furtherance of the goals of the health, order, morals, or safety of society at large. Like statutes, ordinances are presumptively valid and the party challenging an ordinance bears the burden of proving invalidity. In construing the statute or ordinance, all doubts are to be resolved against the challenger and, if possible, the ordinance is to be construed as valid. An impermissible conflict with state law will be found if the Ordinance seeks to prohibit that which a statute expressly permits. If the state has not chosen to occupy an area to the exclusion of municipal regulation, a City may impose additional, reasonable regulations, and may supplement burdens imposed by non-penal law, provided the additional burdens are logically consistent with the statutory purpose.

*Id.* at 696-97 (internal references omitted).

Upon the jury's request to be clarified as to the legal relationship between a statute and a city ordinance, *i.e.* "which is in effect or takes priority," the trial court proffered an additional instruction which was drafted verbatim from the *Hobble* analysis. (Tr. p. 405). Properly exercising its role to determine the law and within the mandate of I.C. § 34-36-1-6, the trial court "discreetly" and concisely provided the jury with guidance to facilitate

its continuing deliberation. *See Henri*, 908 N.E.2d at 205. Therefore, we conclude that the trial court did not abuse its discretion by giving the jurors an additional instruction.

### III. *Appellate Attorney's Fees*

In his appellee's brief, Asher requests this court to award him appellate attorney's fees, contending that Roof committed procedural bad faith pursuant to Ind. Appellate Rule 66(E) by disregarding the content requirements of the rules of appellate procedure.

Indiana Appellate Rule 66(E) provides, in pertinent part: "[t]he [c]ourt may assess damages if an appeal . . . is frivolous or in bad faith. Damages shall be in the [c]ourt's discretion and may include attorney's fees." Our discretion to award attorney's fees under this Rule is limited, however, to instances when an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purposes of delay. *Thacker v. Wentzel*, 797 N.E.2d 342, 346 (Ind. Ct. App. 2003). Additionally, while Indiana Appellate Rule 66(E) provides this court with discretionary authority to award damages on appeal, we must use extreme restraint when exercising this power because of the potential chilling effect upon the exercise of the right to appeal. *Id*.

Indiana appellate courts have formally categorized claims for appellate attorney fees into "substantive" and procedural" bad faith claims. *Id*. To prevail on a substantive bad faith claim, the party must show that the appellant's contentions and arguments are utterly devoid of all plausibility. *Id*. Procedural bad faith, on the other hand, occurs when a party flagrantly disregards the form and content requirements of the rules of appellate procedure, omits and misstates relevant facts appearing in the record, and files a brief written in a manner calculated to require the maximum expenditure of time both by

11

the opposing party and reviewing court. *Id*. at 346-47. Even if the appellant's conduct falls short of that which is "deliberate or by design," procedural bad faith can still be found. *Id*. at 347.

Reiterating his waiver argument, Asher asserts that because Roof only raised issues which were effectively waived as these had not been presented to the trial court and failed to comply with App. R. 46(A)(8)(e), Roof's appeal was "devoid of all plausibility" and appellate attorney's fees should be assessed. (Appellee's Br. p. 16). We disagree.

Finding that Roof's verbatim inclusion of the additional jury instruction, together with his paraphrased objection and appropriate references to the record and transcript amounted to substantive compliance with App.R. 46(A)(8)(e), we declined to waive Roof's argument. Also, having effectively preserved his constitutionality objection to the additional jury instruction, Roof prevented complete waiver of his argument for our review and we addressed this particular contention on its merits. While Roof's appellate brief undeniably included omissions and inadequacies, we cannot say that his brief was calculated to expend the maximum amount of review time and was permeated with such bad faith as to warrant an award of appellate attorney's fees. We deny Asher's request for appellate attorney's fees.

## CONCLUSION

Based on the foregoing, we conclude that (1) the trial court did not abuse its discretion by tendering an additional instruction to the jury after deliberations had started, and (2) Asher is not entitled to appellate attorney's fees pursuant to App. R. 66(E).

12

Affirmed.

MATHIAS, J. and CRONE, J. concur